IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL T. BOWMAN,                    :
           Plaintiff          :          Case No. 4:04-CV-02191
                              :
                              :          (Judge McClure)
         v.                 :
                              :
HARTFORD LIFE AND                    :
ACCIDENT                             :
INSURANCE COMPANY,                   :
           Defendant          :

**M E M O R A N D U M**

September 27, 2005

**<u>BACKGROUND:</u>**

On October 4, 2004, plaintiff Daniel T. Bowman filed a complaint against

defendant Hartford Life and Accident Insurance Company.  Plaintiff's action arises

under the Employee Retirement Income Security Act of 1974 ("ERISA").  This

court has jurisdiction pursuant to 29 U.S.C. § 1132(e).  Plaintiff seeks to recover

long-term disability benefits, and the court's clarification of his entitlement to future

benefits under his Plan.  <u>See</u> 29 U.S.C. § 1132(a)(1)(B).

On April 10, 2005, we ordered that a copy of the Plan and the record before

the Plan administrator when it denied plaintiff's benefits be filed before April 29,

2005.  At that time the court intended to rule on defendant's motion for the

1

application of the arbitrary and capricious standard of review upon receipt of the Plan and record.  Following a further case management conference the parties agreed that the court would postpone its decision on the exact standard of review until it was to rule on the parties' opposing motions for summary judgment.  The Plan and the record have since been filed, and both motions for summary judgment are now ripe for our review.  For the following reasons we will grant defendant's motion for summary judgment, deny plaintiff's motion for summary judgment, and enter judgment in favor of defendant Hartford and against plaintiff Bowman.

## DISCUSSION:

### I.  LEGAL STANDARD

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"If the nonmoving party has the burden of persuasion at trial, 'the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'"  Jalil v. Avdel Corp., 873 F.2d

701, 706 (3d Cir. 1989) (quoting <u>Chippolini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d. Cir. 1987)); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

In evaluating a motion for summary judgment the court will draw all reasonable inferences from the evidence in the record in favor of the nonmoving party. <u>Am. Flint Glass Workers Union v. Beaumont Glass Co.</u>, 62 F.3d 574, (3d Cir. 1995). The nonmoving party, however, cannot defeat a motion for summary judgment by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that creates a genuine issue as to a material fact. <u>See</u> <u>Celotex</u>, 477 U.S. at 32; <u>Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999).

## II.  STATEMENT OF FACTS

In this case we have cross motions for summary judgment. Fortunately, the facts relating to both motions can be synthesized under a single statement of the facts. Because the facts are largely undisputed this statement closely mirrors Hartford's statement of undisputed facts.

Plaintiff Daniel T. Bowman ("Bowman") is an adult individual who resides in Mifflinburg, Pennsylvania. Hartford is a Connecticut corporation with its principal place of business in Simsbury, Connecticut. Hartford insures the Food Lion hourly employees' long-term disability plan ("Plan").

3

The Plan provides Hartford with "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Admin. Rec. & Plan, Rec. Doc. No. 19, at HLI00816.) The relevant text of the Plan indicates that "Total Disability or Totally Disabled means that: (1) during the Elimination Period; and (2) for the next 24 months, you are prevented by . . . accidental bodily injury . . . from performing the essential duties of your occupation. . . . After that, you must be so prevented from performing the essential duties of any occupation for which you are qualified by education, training, or experience."  (Rec. Doc. No. 19, at HLI00799.)

The plaintiff was hired by Food Lion on July 15, 1991, and became insured under the Food Lion hourly employees' long-term disability plan on November 1, 1995.  Bowman worked as a "Meat Department" manager for Food Lion in Orlando, Florida.  On January 2, 1996, Bowman was injured when pushing a pallet jack.  Bowman's last day of work was January 3, 1996.  (Rec. Doc. No. 19, HLI00787.)[1]

On August 27, 1996, Bowman underwent a surgical fusion procedure on his

---

[1]The administrative record indicates that Bowman attempted to return to work light duty on March 24, 1997 and remained at work until April 7 or April 14, 1997.  (Rec. Doc. No. 19, at HLI00074.)

back.  On May 19, 1997, Dr. Flynn, the orthopedic surgeon who performed the spinal fusion, stated that he did not believe Bowman would be able to return to his own occupation, but instead would "require sedentary type work with sitting and standing as needed."  (Rec. Doc. No. 19, at HLI00744.)  On July 14, 1997 and August 4, 1997, Dr. Flynn reiterated that Bowman would need sedentary type work.  (Rec. Doc. No. 19, at HLI00747, HLI00774.)  On August 7, 1997, Dr. Flynn opined that Bowman was totally disabled from his own job and from any other job.  However, he noted that in the future it was possible for a fundamental or marked change in Bowman's capabilities.  (Rec. Doc. No. 19, at HLI00781-782.)  At that time Dr. Flynn identified Bowman as a suitable candidate for further rehabilitation services and stated that a job modification might enable Bowman to work with his impairment.  (Id.)

On September 19, 1997, Hartford awarded long-term disability ("LTD") benefits to Bowman payable effective July 5, 1996.  (Rec. Doc. No. 19, at HLI00724-726.)  Pursuant to the Plan, Bowman was notified that he would continue to receive benefits as long as he met the Plan definition of Total Disability, but not beyond July 4, 2021. Bowman was also informed that following the first twenty-four months of disability the definition of total disability changed and he must be prevented from performing the essential duties of any occupation for which he was

qualified by education, training or experience in order to be considered totally disabled.

On November 18, 1997, Bowman's application for Social Security benefits was denied. (Rec. Doc. No. 19, at 697-698.)  Bowman subsequently filed a request for reconsideration of that denial.  (Rec. Doc. No. 19, at HLI00695.)  On January 22, 1999, the SSA upheld the denial of Bowman's claim for benefits.  As part of that decision the ALJ concluded that Bowman had the residual functional capacity to perform the full range of sedentary work and was not entitled to Social Security benefits.  (Rec. Doc. No. 19, at HLI00612-624.)  On October 27, 2000, the Social Security Appeals Council concluded that there was no basis to review his claim and authorized him to pursue a federal civil action if he so wished.  (Rec. Doc. No. 19, at HLI00525-526.)

On February 12, 1998, Dr. Flynn reported that Bowman could stand and walk for two hours each per day for four days a week, could occasionally lift and carry a maximum of 20 pounds, and could reach or work overhead occasionally. (Rec. Doc. No. 19, at HLI00687-688.)  On April 9, 1998, Dr. Flynn completed a physical capacities evaluation in which he noted that Bowman could stand, sit, walk and drive for one to three hours in an eight-hour workday. (Rec. Doc. No. 19, at HLI00638.)  Dr. Flynn also indicated that Bowman was capable of simple grasping,

6

pushing and pulling and fine manipulation, and could reach above his shoulder and use his feet frequently. He noted that Bowman was unable to bend, squat, climb, kneel, or crawl. He also noted that he had a 20-pound maximum lifting capacity but that he could frequently lift or carry up to 10 pounds which was classified as light work, that Bowman was unaffected by environmental factors, and that he had reached maximum improvement as of August 28, 1997. (Rec. Doc. No. 19, at HLI00638.)  Dr. Flynn concluded that these were Bowman's only restrictions and he was clear to return to work as of August 28, 1997. (Rec. Doc. No. 19, at HLI00638.)

As of July 1998, the Plan required that Bowman establish that he was totally disabled from any occupation in order to remain eligible to receive LTD benefits. (Rec. Doc. No. 19, at HLI00686, HLI00799.)  On June 22, 1998, Hartford informed Bowman that his claim had been approved for benefits beyond July 6, 1998. (Rec. Doc. No. 19, at HLI00647.)

On September 3, 1998, Dr. Flynn reported that, although Bowman's prospects for returning to work in his own occupation were poor, his prospects for returning in some occupation were good. (Rec. Doc. No. 19, at HLI00636-637.) Bowman completed a personal profile evaluation regarding his daily activities on which he reported that he could sit for only about a half an hour to an hour

maximum, that he still had a non-fusion of L5-S1 and the more active he became, the more his back pain increased. (Rec. Doc. No. 19, at HLI00597-602.)  On April 21, 1999, Dr. Flynn opined that Bowman could stand and walk for two to four hours daily, reach/work overhead occasionally, and lift/carry 0-20 pounds occasionally, but never more than that. (Rec. Doc. No. 19, at HLI00605-606.)  On May 5, 1999, Hartford wrote to Bowman informing him that it had received Dr. Flynn's April 21, 1999, report and that Dr. Flynn "has noted what appears to be an improvement to your physical restrictions from those stated on a questionnaire received from [Dr. Flynn] 9/98," on which Dr. Flynn indicated that Bowman could only sit, stand and walk for one to three hours daily. (Rec. Doc. No. 19, at HLI00603, HLI00637.)  Hartford also informed Bowman that his file would be referred to a rehabilitation specialist to help him to determine whether he would be able to return to work.

On April 4, 2000, Karen A. Steidle, M.D., one of Bowman's treating physicians from Lewisburg, Pennsylvania, completed an Attending Physician Statement and a physical capacity evaluation form indicating that Bowman could sit, stand and walk for up to four hours each in an eight hour day, with rest, that he could frequently lift 1-10 pounds, occasionally lift 11-20 pounds, and could never lift over 20 pounds. (Rec. Doc. No. 19, at HLI00531-533). She noted that he could

8

reach frequently, could handle, finger, or feel constantly, but never climb, balance, stoop, kneel, crouch, or crawl.  She also noted that he could not return to his own occupation, but he was capable of performing light work and could begin immediately.

Beginning in September 2000, Bowman began obtaining services at the Commonwealth of Pennsylvania Department of Labor & Industry, Office of Vocational Rehabilitation ("OVR").  On October 3, 2000, Donald Fornwalt, a counselor at OVR, met with Bowman and they discussed the possibility that Bowman might buy, build, and sell real estate without being involved in the physical construction work.  Fornwalt also noted that Bowman had the capital necessary to do this because he had "some investments and a large savings acc[oun]t." (Rec. Doc. No. 19, at HLI00513.)  From November 2000 through February 2002, Fornwalt and Bowman discussed various employment and educational options for Bowman.  Bowman eventually began taking classes at the McCann School of Business and Technology ("McCann").

Bowman and Fornwalt both sought to have Hartford pay for these courses and Hartford, in turn, sought to obtain information from Bowman about these courses.  On March 22, 2002, Bowman spoke with Fornwalt who indicated Bowman was "demanding that OVR support him in trying to secure additional

funding from Hartford for schooling," and Bowman used a "threatening tone at times." (Rec. Doc. No. 19, atHLI00236.)  Hartford had ongoing discussions with OVR regarding whether it would be able to contribute money to Bowman's tuition, and Hartford sought information from both Fornwalt and McCann.  On October 15, 2002, Fornwalt completed his annual review in which he noted that Bowman was doing well at McCann and the plan continued to be for him to finish out that program and to begin looking for employment.

On March 1, 2002, Dr. Paul J. O'Braonáin, a family practice physician in Milton, Pennsylvania, completed an Attending Physician Statement in which he indicated that, with respect to standing, walking, sitting, lifting/carrying, reaching/working overhead, pushing and pulling, Bowman was "unable to tolerate [these activities] due to pain." (Rec. Doc. No. 19, at HLI00487-488.)  He noted that Bowman's driving was limited due to pain in his legs and back and that his use of a keyboard may be improved after a recent surgery.  On January 17, 2003, Dr. O'Braonáin reported that Bowman's condition has not improved. He also reported that Bowman was attending school but he was not sure if Bowman could ever handle more than part-time work.  Furthermore, Dr. O' Braonáin noted that Bowman was to see a neurologist for a second opinion.

On May 19, 2003, Dr. Robin Spangler saw Bowman for approximately

twenty-five minutes and filled out a physical capacities evaluation form which indicated that Bowman would only be capable of part-time work.  (Rec. Doc. No. 19, at HLI00373-374, HLI00376.)

Beginning in February 2002, plaintiff visited Dr. William Reish of Sun Orthopedics, who became one of plaintiff's treating physicians for issues related to his hands. (HLI00425; HLI00429-30).  On May 21, 2003, Dr. Reish completed a physical capacities valuation form for Bowman in which he noted that Bowman could sit for eight hours, and stand, walk and drive for four hours, and was capable of working for eight hours per day. He also found that Bowman could constantly lift between 1-20 pounds, could frequently lift 21-50 pounds, could occasionally lift 51-100, but could never lift over 100 pounds. He further noted that Bowman could constantly climb, balance, stoop, kneel, crouch, crawl and reach at and below waist level. He could occasionally reach above his waist level and he could constantly handle, finger, and feel. He found that these restrictions were permanent.  He noted that Bowman had the capacity for repetitive use of both hands and feet. (Rec. Doc. No. 19, at HLI00387-389.)  Dr. Reish found that plaintiff was capable of working eight hours per day. (Rec. Doc. No. 19, at HLI00388.)

On January 13, 2004, Hartford wrote to Rodwan K. Rajjoub, M.D., F.A.C.S., of the Lycoming Neurological Associates, Inc., a neurologist who

11

had treated Bowman.  Dr. Rajjoub confirmed that Bowman was capable of performing a light occupation or a sedentary occupation. (Rec. Doc. No. 19, at HLI00145).

On February 13, 2004, Hartford obtained an employability analysis report ("EAR") for Bowman which revealed four occupations which were semi-skilled and all of which Mr. Bowman could perform and which exceeded the earnings requirements imposed by the Plan. Those occupations included: surveillance system monitor; manager, marketing; apparel stock checker; and customer service clerk.  (Rec. Doc. No. 19, at HLI00122, HLI00124-142.)

On February 19, 2004, Hartford denied Bowman additional LTD benefits as of February 1, 2004 on the basis that he was able to perform other occupations and, therefore, no longer met the Plan definition of "Total Disability" as of that date. (Rec. Doc. No. 19, at HLI00118-123, HLI00799.)  At that time Hartford noted the medical evidence in the record and found that treating physician Dr. Rajjoub had recently stated he was capable of performing a sedentary and light occupation.  At that time the EAR employability results were also communicated to Bowman.

On March 29, 2004, Bowman appealed Hartford's decision to terminate his benefits.  In reviewing Bowman's claim on appeal, Hartford referred Bowman's

claim for an independent medical review on April 15, 2004.  Hartford provided all available medical information on Bowman and requested that the independent physician "review the available data and provide your opinion as to Mr. Bowman's work capacity along with any specific work restrictions that might apply." (Rec. Doc. No. 19, at HLI00108.)

Bowman's file was reviewed by Robert Y. Pick, M.D., MPH, who is board certified in Orthopedic Surgery. (Rec. Doc. No. 19, at HLI00092-101.)  After discussing all of the medical information, Dr. Pick indicated it was his considered medical opinion, to a reasonable degree of medical certainty, based on review of the records and documents, that as of 2/1/04, Bowman was able to engage in prior occupational activities as noted above, namely an eight-hour work day, with "no standing and/or walking longer than 2-3 hours at a time without the ability to change positions. The ability to perform occasional sitting 1-2 hours total per work day. No repetitive kneeling, crouching, stooping, reaching overhead, climbing stairs, twisting, or turning. The ability to perform lifting, carrying, pushing or pulling up to 20 lbs occasionally and up to 10 lbs frequently. The patient can perform frequent to constant fingering, feeling, and/or handling (bilateral upper extremities)." (Rec. Doc. No. 19, at HLI00100.)  Dr. Pick noted that his "interpretation of the restricted work activities by the various health care providers seem to focus on Mr. Bowman's

13

subjective symptoms and complaints rather than on strictly objective criteria."

(Rec. Doc. No. 19, at HLI00100.)  Finally, Dr. Pick noted that it was his

"considered medical opinion, to a reasonable degree of medical certainty, that Mr.

Bowman can engage in moderate work activities with frequent lifting and carrying

up to 20 pounds and occasionally lifting/carrying up to 40 pounds. The medical

evidence provided and reviewed has failed to validate or substantiate the significant

work restrictions that were placed on this individual. This man can certainly work

an eight-hour work day." (Rec. Doc. No. 19, at HLI00100-101.)

On April 28, 2004, Bowman's lawyer wrote to Hartford arguing

that when Dr. Rajjoub released Bowman for work, he must have meant only that

Bowman's cervical, rather than lumbar spine did not disable him. (Rec Doc. No.

19, at HLI00104.)  Bowman did not provide anything from Dr. Rajjoub to show

that he intended his release to be read narrowly.

On May 13, 2004, Hartford wrote to Bowman's counsel upholding its prior

determination. (HLI0089-90).  Hartford considered but did not accept the

restriction Bowman's counsel attempted to place on Dr. Rajjoub's release because

no such restriction was contained in the language of the release and the doctor's

records make clear that "he was aware of Mr. Bowman's low back pain as he listed

it as a diagnosis on his 9-8-03 treatment note." (Rec. Doc. No. 19, at HLI00090.)

14

### III.  Applicable Standard of Review

Under ERISA, a court reviewing an administrator's decision to deny benefits is by default reviewed <u>de</u> <u>novo</u>, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine the employee's eligibility or construe the terms of the plan."  <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>Stratton v. E.I. DuPont De Nemours & Co.</u>, 363 F.3d 250, 253 (3d Cir. 2004).  If a plan provides discretionary authority to the administrator or fiduciary, then a reviewing court applies a form of arbitrary and capricious review.  <u>Firestone Tire & Rubber Co.</u>, 489 U.S. at 111-12, 115; <u>see</u> <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 437 (3d Cir. 1997).  Discretionary authority can be provided for by expressed or implied language in the benefit plan.  <u>Luby v. Teamsters Health, Welfare, & Pension Trust</u>, 944 F.2d 1176, 1180 (3d Cir. 1991).  Whether that arbitrary and capricious review is heightened in any way depends on the presence of potentially conflicted ERISA fiduciaries and is determined on a sliding scale.  <u>Pinto v. Reliance Standard Life Ins. Co.</u>, 214 F.3d 377, 379 (3d Cir. 2000).

The scope of discovery depends on the standard of review.  In the Third Circuit, "a district court exercising de novo review over an ERISA determination between beneficiary claimants is not limited to the evidence before the Fund's Administrator."  <u>Luby</u>, 944 F.2d at 1184-85.  In sharp contrast, the record available

15

to a court conducting an arbitrary and capricious review is the record made before the plan administrator, which cannot be supplemented during litigation.  <u>See</u> <u>Kosiba v. Merck & Co.</u>, 384 F.3d 58, 67 n.5 (3d Cir. 2004) (citing <u>Mitchell</u>, 113 F.3d at 440).  Nevertheless, when a reviewing court is deciding whether to employ the arbitrary and capricious standard or a more heightened standard of review, it may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record.  <u>Id.</u>

### A.  Slightly Heightened Arbitrary & Capricious Standard of Review

In our order dated April 6, 2005, (Rec. Doc. No. 16.), we determined, as the parties had agreed, that Hartford's decision to deny plaintiff's LTD benefits must be reviewed under a heightened arbitrary and capricious standard.[2]  With the plan language now in the record, we grant defendant's motion for application of the arbitrary and capricious standard of review and, for the following reasons, apply a

---

[2]The language of the Plan provides that "[t]he Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."  (Rec. Doc. No. 19, at HLI00816.)  The Plan also requires a claimant to "submit proof of loss satisfactory to The Hartford."  (Rec. Doc. No. 19, at HLI00807.)  The claims procedure set forth in the Plan indicates that decisions on claims for benefits and appeals of denial of claims are made by the Insurance Company.  (Rec. Doc. No. 19, at HLI00820-821.)  Hartford both funds and administers the Plan, which creates a conflict that warrants a heightened form of arbitrary and capricious review.  <u>Pinto</u>, 214 F.3d at 378.

slightly heightened standard.

The Third Circuit follows a sliding scale approach to applying an arbitrary and capricious review. The sliding scale allows for the court to intensify its scrutiny of the insurer's decision to match the degree of conflict present in the insurer's decision making process. See Pinto, 214 F.3d at 392. In Pinto, the United States Court of Appeals for the Third Circuit provided four factors for courts to consider in determining the exact degree of scrutiny. Id. Those factors are: "(1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the status of the fiduciary, as the company's financial or structural deterioration might negatively impact the 'presumed desire to maintain employee satisfaction.'" Stratton, 363 F.3d at 254 (citing Pinto, 214 F.3d at 392). The Third Circuit stated in Pinto that they "expect district courts to consider the nature and degree of apparent conflicts with a view to shaping their arbitrary and capricious review of the benefits determinations of discretionary decisionmakers." 214 F.3d at 393.

As to the first factor, obviously the plaintiff has less experience with disability claims when compared to Hartford. Of course the relative sophistication of the parties is only one factor, and does not exclusively control the degree of

17

scrutiny we will apply to Hartford's decision.  See Rendulic v. Kaiser Aluminum &

Chemical Corp., 166 F. Supp. 2d 326, 337 n.5 (W.D. Pa. 2001) (stating that

disparity among parties alone was not a "critical factor").  Moreover, we agree with

defendant that this first factor under Pinto is tempered when a plaintiff, such as

Bowman, is represented by counsel during the administrative claims process.  See

Schlegel v. Life Ins. Co. of N. America, 269 F. Supp. 2d 612, 617 n.4 (E.D. Pa.

2003) (applying deferential arbitrary and capricious standard where plaintiff was

relatively sophisticated and was represented by counsel).  Therefore, although a

disparity in the sophistication of the parties exists, that disparity warrants only a

slight heightening of our arbitrary and capricious review.

Plaintiff contends that Hartford made information inaccessible to plaintiff

before the insurance company drafted its February 19, 2004 letter which

summarized the data Hartford had received.  Plaintiff asserts that he had no

advance warning that defendant was contemplating terminating his benefits.  We

agree with defendant that plaintiff's argument does not address the decision under

review, i.e., Hartford's final May 13, 2004 decision to terminate his benefits.  The

record indicates that when plaintiff's counsel requested medical records by letter

dated March 29, 2004, Hartford at some point shortly thereafter supplied plaintiff

with the documents.  (Rec. Doc. No. 19, at HLI0104, HLI00113-115.)  Plaintiff has

18

not convinced us that in the time leading up to Hartford's final decision to terminate

his benefits he was denied access to information which would warrant further

heightening our review of Hartford's decision.

Plaintiff further contends that Hartford attempted to veil how it funds and

administers the Plan.  Examination of the record indicates that this is simply not

true.  Hartford has provided detailed responses to plaintiff's requests about how

the Plan is funded and administered. See (Rec. Doc. No. 23, Ex. C.)  Hartford, as

the insurance company, both funds and administers the Plan.  Hartford sold a

group LTD policy to Food Lion, which policy covered approximately 28,500 Food

Lion employees.  The price of that policy was dependent on a number of factors,

including the number of people in the group for whom coverage was provided.

(Rec. Doc. No. 23, Ex. C.)  The people in charge of making benefit determinations

have no responsibility for the calculation or collection of premium amounts and are

not provided with information about any financial issues regarding a particular

policy.  However, because the insurer has not hired a third-party claims

administrator and both issued the policy and administered the claims made

thereunder, the insurer's decision in this case is subject to a heightened review.

See, e.g., Morris v. Paul Revere Ins. Co., 986 F. Supp. 872, 881 (D. N.J. 1997)

(discussing how when an insurer both administers and issues the same plans a

19

conflict of interest is created); see also Pinto, 214 F.3d at 389 n.7 (gathering cases where district courts applied "heightened scrutiny when the insurance company is the insurer and makes determinations").

In Hartford's answers to interrogatories, the insurance company provided further detail as to how the Plan is administered. The individuals making the benefit determinations at Hartford have no financial incentive to deny a claim. Their performance is evaluated on the quality and accuracy of their claims decisions. Claims are reviewed without regard to the manner in which the Plan is funded. Furthermore, Hartford indicates that there are no numerical guidelines or quotas regarding claim payments or denials. Although structurally the Plan is both funded and administered by Hartford, the insurance company, which creates an inherent conflict of interest that warrants some form of heightened scrutiny, Pinto, 214 F.3d at 387; there is no evidence regarding Hartford's procedures in administering the Plan that warrants any further heightening.[3]

Finally, as to the fourth Pinto factor, there is no evidence that Hartford is experiencing financial or structural deterioration. Therefore, we will apply a slightly

---

[3]We fail to see how Hartford's hiring of Dr. Pick to evaluate the medical evidence in the administrative record was a procedural anomaly. We do not find the record as overwhelmingly one-sided as plaintiff has portrayed it in his brief.

heightened level of scrutiny in our arbitrary and capricious review of Hartford's decision to terminate plaintiff's LTD benefits.  By applying a slightly heightened standard the court provides the Plan administrator deference, but not absolute deference.  Bader v. RHI Refactories America, Inc., 111 Fed.Appx. 117, 120 (3d Cir. 2004) (citing Pinto, 214 F.3d at 393).

### B.  Applying a Slightly Heightened Arbitrary & Capricious Review to Hartford's Decision

Our inquiry in conducting an arbitrary and capricious review of the insurer's decision is not whether Hartford made the same decision that we would have made; a district court cannot substitute its own judgment for that of the Plan administrator when conducting an arbitrary and capricious review.  Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (quoting Lucash v. Strick Corp., 602 F. Supp. 430, 434 (E.D. Pa. 1984)).  A district court conducting an unadulterated arbitrary and capricious review may overturn a decision of a Plan administrator only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law."  McLeod v. Hartford Life & Accident Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004) (quotation marks and citations omitted).

Because we have slightly heightened our scrutiny under Pinto, we will give slightly less deference to Hartford, but our review will be nowhere similar to a de

novo review.  Under a heightened review the administrator is "not afforded

complete, freewheeling discretion," and the reviewing court must be "especially

mindful to ensure that the administrator's interpretation of the policy language does

not unfairly disadvantage the policy holder." Id. at 624.  Applying heightened

scrutiny to Hartford's decision to terminate Bowman's LTD benefits requires us to

be certain that a reasonable fact finder could conclude there was substantial medical

evidence in the administrative record to support Hartford's determination that

plaintiff was not entitled to LTD benefits under the terms of the Plan.

## IV.  Hartford's Decision to Terminate Benefits on Grounds that Plaintiff was Capable of Performing "Any Occupation"

Plaintiff asserts that there is a "total absence of any medical evidence to

support Hartford's reason for terminating Bowman's benefits."  (Rec. Doc. No.

26, at 17.)  This statement is patently untrue.  By letter dated February 19, 2004,

Hartford terminated Bowman's benefits effective January 31, 2004.  Bowman

began receiving benefits from the Hartford effective July 5, 1996.  Therefore, on

July 6, 1998, after twenty-four months of receiving benefits under the first definition

of total disability under the plan, the definition of total disability under the plan

changed according to the terms outlined in the second portion of the definition.

That definition provides that Bowman "must be so prevented from performing the

essential duties of <u>any occupation for which you are qualified by education,</u>
<u>training, or experience</u>."  (Rec. Doc. No. 19, at HLI000799) (emphasis added); <u>see</u>
<u>also</u> (Rec. Doc. No. 19, at HLI00007.)

Despite plaintiff's claims to the contrary several doctors have found that
Bowman is capable of working.  At the time Hartford decided to terminate
plaintiff's benefits Dr. Reish and Dr. Rajjoub believed that Bowman was capable of
performing full time sedentary and light work.  (Rec. Doc. No. 19, at HLI00145 &
HLI00388.)[4]

Other medical experts in the record have indicated Bowman was not capable
of returning to work.  By letter dated January 17, 2003, plaintiff's treating physician
Dr. O'Braonáin found that Bowman "would not be able to handle even a sedentary
job for an eight hour workday."  (Rec. Doc. No. 19, at HLI00415.)   Dr.
O'Braonáin further noted that he was "not sure if [Bowman] is ever going to be
able to handle full-time work again."  (Rec. Doc. No. 19, at HLI00415.)  On May
19, 2003, Dr. Spangler indicated that Bowman would only be capable of part-time

---

[4]We note that on October 2, 1997, Bowman applied for disability insurance
benefits allegedly due to radiating back pain and depression.  His application was
denied on November 18, 1997.  In upholding the initial denial of his benefits, the
ALJ found that the claimant had the residual functional capacity to perform the full
range of sedentary work.  (Rec. Doc. No. 19, at HLI00613-624.)

work.  (Rec. Doc. No. 19, at HLI00373-374.)  In the more distant past, during

1997, Dr. Flynn provided a series of medical reports that indicated Bowman was

not capable of returning to work, but that ultimately he believed plaintiff would be

able to do sedentary light work with specific restrictions. (See Rec. Doc. No. 19, at

HLI00636-638, HLI00743-747.)  On a April 9, 1998 physical capacity evaluation

form, Dr. Flynn provided a series of work restrictions for Bowman and did not

indicate whether Bowman could work an eight-hour day.  (Rec. Doc. No. 19, at

HLI00638.)[5]

Hartford, therefore, had to resolve a conflict between competing medical

records and opinions.  Defendant does not dispute that Bowman at one time was

totally disabled under the terms of the Plan.  However, Hartford argues that medical

evidence taken as a whole indicates that Bowman is now capable of work and that

he is no longer totally disabled under the terms of the Plan.  Hartford, as part of its

administrative process, conducted an employability analysis which identified four

occupations that are within Bowman's physical capabilities and for which he was

---

[5]Dr. Flynn's report contains conflicting information.  On one form dated
April 9, 1998 he notes that Bowman is cleared to return to work without restrictions
as of August 28, 1997.  (Rec. Doc. No. 19, at HLI00638.)  Then in a letter signed
on September 3, 1998, Dr. Flynn indicates there is a poor prognosis for Bowman
to return to his current type of employment.  (Rec. Doc. No. 19, at HLI00636-638.)

qualified.  (Rec. Doc. No. 19, at HLI0010.)

Plaintiff relies nearly exclusively on the opinion of Dr. O'Braonáin to support his claim that Hartford made its determination in an arbitrary and capricious manner.  In Black & Decker Disability Plan v. Nord, the United States Supreme Court held that a plan administrator does not need to afford special deference to opinions of claimant's treating physicians.  538 U.S. 822, 831, 834 (2003); Stratton, 363 F.3d at 257-58.  Hartford did not have to rely on Dr. O'Braonáin's opinion in its interpretation of the terms of the plan.  Of course "plan administrators cannot arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."  Black & Decker Disability Plan, 538 U.S. at 834.

The record indicates that Hartford did not arbitrarily refuse to credit Bowman's reliable evidence.  Rather Hartford hired Dr. Pick to conduct an evaluation of the entire record, and in evaluating conflicting medical evidence Dr. Pick determined that based on his medical opinion "Mr. Bowman can engage in moderate work activities with frequent lifting and carrying up to 20 lbs and occasionally lifting/carrying up to 40 lbs."  (Rec. Doc. No. 19, at HLI00087).  Dr. Pick went on to conclude that the "medical evidence provided and reviewed has failed to validate or substantiate the significant work restrictions that were placed on

25

this individual," and that "[Bowman] can certainly work an eight-hour workday."
(Rec. Doc. No. 19, at HLI00088.)  Hartford's use of Dr. Pick to evaluate the
cumulative record was a sound method for resolving the conflicting medical
evidence in the record.  See, e.g., Nichols v. Verizon Commc'ns, 78 Fed. Appx.
209, 211 (3d Cir. Oct. 20, 2003) (upholding benefit determination where
administrator resolved conflict between treating physician and independent
reviewing physician); see also Black & Decker Disability Plan, 538 U.S. at 831, 834
(plan administrator need not provide special deference to treating physician).

Additionally, although plaintiff contends that Dr. Rajjoub only cleared
plaintiff to work in regard to Bowman's cervical spine condition for which he had
treated him, and not plaintiff's lumbar problems which originally caused his
disability, the record does not support that claim.  There is no qualification in Dr.
Rajjoub's February 3, 2004 letter that his release back to work was based on only
his opinion on his cervical spine condition; Dr. Rajjoub simply opined that he
believed he could perform light and sedentary work in an eight-hour workday
capacity.  (Rec. Doc. No. 19, at HLI00145.)  Furthermore, as Hartford noted when
it upheld the denial, (Rec. Doc. No. 19, at HLI0090), the record indicates that Dr.
Rajjoub was aware of Bowman's lumbar condition and its associated pain, as he
included that pain as part of his impression in his September 8, 2003 office notes.

(Rec. Doc. No. 19, at HLI00158.)

## CONCLUSION:

In summary, we find that Hartford did not act in an arbitrary and capricious manner when it denied Bowman's LTD benefits.  The record, although conflicted, included the opinions of treating physicians who determined Bowman was capable of working in light and sedentary work.  As part of Bowman's administrative appeal, Hartford contacted an independent physician to review the entire record and opine on the conflicting evidence in the record.  Even with heightened scrutiny placed on Hartford's decision making process we cannot find that Hartford denied Bowman's LTD benefits in an arbitrary or capricious manner.  Rather, Hartford found Bowman disabled for an extensive period of time, but the medical evidence as provided by several sources indicated that Bowman's condition improved so that he is now capable of returning to work.  Thus, under the terms of the plan it was neither arbitrary nor capricious for Hartford to terminate Bowman's benefits.

      s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL T. BOWMAN,                  :
          Plaintiff          :          Case No. 4:04-CV-02191
                          :
                          :          (Judge McClure)
          v.                       :
                          :
HARTFORD LIFE AND            :
ACCIDENT                            :
INSURANCE COMPANY,       :
          Defendant         :

**O R D E R**

September 27, 2005

For the reasons set forth in the accompanying memorandum:

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Defendants' motion for application of the arbitrary and capricious review is granted.  (Rec. Doc. No. 11.)  Furthermore, pursuant to <u>Pinto</u>, the court applied a slightly heightened degree of scrutiny in our arbitrary and capricious review of Hartford's decision.

2.    Defendant's motion for summary judgment is granted.  (Rec. Doc. No. 22.)

3.    Plaintiff's motion for summary judgment is denied.  (Rec. Doc. No. 25.)

1

4.      Final judgment is entered in favor of defendant Hartford Life and

Accident Insurance Company and against plaintiff.

5.      The Clerk is directed to close the case file.


    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

2